# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| | ) | 2:12-cr-93 |
| v. | ) | |
| | ) | |
| RANDEE GILLIAM and DORIAN GILLIAM, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court are the MOTION TO SUPPRESS EVIDENCE (Document No. 443), SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE (Document No. 458), MOTION TO SUPPRESS EVIDENCE (Document No. 684) and AMENDED MOTION TO SUPPRESS EVIDENCE (Document No. 700) filed by Defendants Randee Gilliam and Dorian Gilliam. The motions relate to the stop and search of an Avis rental car on March 10, 2012.

The Court conducted an evidentiary hearing on the motions on October 27, 2015. The government presented testimony from Monroeville police corporal Jason Safar, Monroeville police officer Ronald Croll, Avis territory manager Mark Lovetro and DEA Special Agent Frank Vezio. Defendants did not present any witnesses. The parties requested post-hearing briefing. The government filed a post-hearing brief (ECF No. 727), to which counsel for Randee and Dorian Gilliam filed responses (ECF Nos. 736, 739). The motions are now ripe for disposition.

Factual and Procedural Background

This criminal case arose out of a lengthy government investigation of drug trafficking, which is described in the affidavits submitted to obtain wiretaps on various phones used by the alleged conspirators. The investigation was triggered in October 2011 when two Fed Ex/UPS parcels were intercepted by DEA agents. The parcels were shipped by John Saban, addressed to Randee Gilliam, and contained a total of $49,980.00 in United States currency. DEA agents believed that Dorian Gilliam and

Randee Gilliam supplied cocaine to John Saban, who in turn supplied cocaine to Lamont Wright. A wiretap on the phone of Dorian Gilliam was authorized and commenced on March 8, 2012. In addition to wiretaps, the agents utilized confidential sources and performed controlled purchases of cocaine, among other investigative techniques, to develop evidence regarding the alleged conspiracy.

Dorian Gilliam and Randee Gilliam reside in Atlanta, Georgia. On March 9-10, 2012, the phone wiretaps revealed that the Gilliams were travelling to Pittsburgh to meet with Saban. DEA agents engaged in intensive surveillance of the Gilliams' activities in the Pittsburgh area, including DEA Agent Vezio in an airplane. Agents observed the Gilliams rent a silver Impala at the Avis kiosk in the Pittsburgh airport, and followed them to the Renaissance hotel and Savoy nightclub. The next morning, other agents learned from a GPS unit on Saban's car that Saban had gone to a self-storage unit in Verona, Pennsylvania and then returned home. Agents observed Saban carry a cardboard box into his garage.

At 10:35 a.m., agents followed the Gilliams as they left the hotel and drove the Avis rental car to Saban's home. The Gilliams arrived around 11:00 a.m. and went into Saban's garage. Agents watched as Randee Gilliam carried a cardboard box out of the garage and place it in the trunk of the Avis rental car. Agents believed that this was the same box that Saban had retrieved from the storage unit earlier that morning and that it contained money (drug proceeds). Randee Gilliam then drove away in the rental car, while Dorian Gilliam stayed at Saban's home.

Agents followed Randee Gilliam to a nearby Lowe's home improvement store in Monroeville, Pennsylvania. Agents observed him purchase a safe and padlock and place those items in the trunk of the Avis rental car. Agents then contacted local Monroeville police and requested that they perform a "walled off stop," (i.e., an apparently routine traffic stop that would not disclose the extent of the DEA investigation). Monroeville police corporal Jason Safar arrived at the Lowe's parking lot, found the subject rental car, saw Gilliam place several items in the trunk, and then followed the Avis rental car out of the parking lot. Safar was in a marked police car and in full uniform. Safar observed that the registration sticker on the rear window of the rental car was curled, such that it was not fully legible.

Defendants' Exh. A. Safar then conducted a traffic stop and informed the driver, Randee Giliam, that the traffic stop was based on the illegible registration sticker.

At this time, the parties were located in the parking lot of a local business. Corporal Safar requested Randee Gilliam's license, registration and insurance information. Gilliam also provided the Avis rental agreement. Upon review, Corporal Safar learned that the only authorized driver of the rental car was Dorian Gilliam. Government Exh. 3. Another officer, Ronald Croll, had arrived on scene. Officer Croll contacted Avis to determine whether Avis had a policy regarding unauthorized drivers of their rental cars. The Avis representative instructed Officer Croll that it was corporate policy to have the car towed and impounded until it could be picked up by an Avis representative.[1] Accordingly, the officers contacted Magill's towing company.

Officer Safar advised Randee Gilliam that the car was to be towed. Randee responded that he would try to get Dorian to come to the scene. Magill's towing company arrived within 15-20 minutes and began to hook up the rental car. Shortly thereafter (approximately 20 minutes after Officer Croll spoke with Avis and while Magill was in the process of hooking up the car), Dorian arrived on scene and identified himself as the authorized driver of the rental car. Nevertheless, the officers had the car towed. The tow truck took the rental car to the Monroeville training center, which was a secure, fenced location. Safar and Croll followed. Randee and Dorian Gilliam remained at the scene and were not taken into custody.

Approximately 45 minutes later (after the surveillance plane landed), DEA agents arrived at the training center and conducted a search of the rental car. They found the cardboard box in the trunk. It contained a large sum ($150,000) of United States currency. Government Exh. 1.

On April 10, 2012, a grand jury issued a one-count indictment which charged Randee Gilliam, Dorian Gilliam, John Saban, Arlen Smith, Courtney Wallace, Kevin McKinzie, Lamont Wright, Genaro

---

[1] Officer Croll did not recall the name of the Avis representative to whom he spoke that day. Mark Lovetro, Avis territory performance manager, testified at the evidentiary hearing that such instruction was consistent with Avis corporate policy. The Court finds the testimony of Croll and Lovetro to have been credible.

Coleman, Eric Campbell and Frederick Ellis with conspiracy to distribute 5 kilograms or more of cocaine. On November 8, 2012, the grand jury issued a four-count superseding indictment. In addition to the cocaine conspiracy in count 1, Randee Gilliam and Dorian Gilliam (along with John Saban) are charged in count 2 of the superseding indictment with conspiracy to commit money laundering. On August 29, 2013, a grand jury returned a two-count indictment in Criminal Case No. 13-235, which charges Myrene Gilliam with the cocaine and money laundering conspiracies. The cases have been consolidated for trial. To date, Defendants Saban, Coleman, McKinzie, Smith and Wallace have pled guilty.

Legal Analysis

As a threshold issue, the government contends that neither Randee nor Dorian Gilliam has standing to challenge the search of the rental car. In addition, the government contends that the agents had probable cause to believe that the rental car contained proceeds of drug trafficking from the totality of their investigation; that the agents had probable cause to conduct a warrantless search of the rental car based on the "automobile exception"; that the "walled off" stop of the vehicle was proper; and that the cash would have been inevitably discovered after Avis instructed the officers to tow the rental car. Defendant Dorian Gilliam contends that he has standing to challenge the search, as the authorized renter of the vehicle; that the warrantless search was improper because the agents did not have probable cause to believe that the cardboard box contained drug proceeds; and that the Monroeville police did not have probable cause to stop the vehicle based on the "curled" registration sticker. Thus, Dorian Gilliam contends, the subsequent inventory search was improper. Defendant Randee Gilliam contends that both Defendants have standing to challenge the search. In support of an argument that the Avis rental car was rented by both Defendants, Randee Gilliam has attached a copy of a Georgia proof of insurance card issued by American Family Insurance Company to Randee Gilliam for a Mercedes 2009 SL 550. Randee Gilliam also contends that the agents lacked reasonable suspicion to conduct the "walled off" traffic stop and, in the alternative, that the agents had sufficient time to obtain a search warrant. Finally, Randee

Gilliam contends that the inventory search was investigative, rather than custodial, such that the agents should have obtained a search warrant. The Court agrees with the government that neither Defendant has standing, and therefore, it need not address the remaining contentions of the parties.

It is clear that Randee Gilliam does not have standing to challenge the search of the vehicle. In *United States v. Kennedy*, 638 F.3d 159, 165 (3d Cir. 2011), the United States Court of Appeals held, in a binding precedential opinion, that: "as a general rule, the driver of a rental car who has been lent the car by the renter, but who is not listed on the rental agreement as an authorized driver, lacks a legitimate expectation of privacy in the car unless there exist extraordinary circumstances suggesting an expectation of privacy." The Court explained that "society generally does not share or recognize an expectation of privacy for those who have gained possession and control over a rental vehicle they have borrowed without the permission *of the rental company*." *Id*. at 168 (emphasis added). Merely obtaining permission from the authorized renter is not sufficient. *Id*.

Defendants have failed to convince the Court that this case involves "extraordinary circumstances" sufficient to avoid the general rule set forth in *Kennedy*. The familial relationship was not close, i.e., spousal or parent/child. Rather, it was uncle/nephew. The rental agreement clearly was in the name of Dorian only. The relevance of the Georgia proof of insurance card is unclear, but in any event, it cannot override the terms of the Avis rental agreement. As explained in *Kennedy*, "an individual who borrows a rental car without the permission or knowledge of the owner not only acts in contravention of the owner's property rights, but also deceives the owner of the vehicle while increasing the risk that the property will be harmed or lost." *Id*. at 165.

Even if Defendants could establish "extraordinary circumstances," this Court would be compelled by *Kennedy* to hold that Randee Gilliam nevertheless lacks standing under the facts of this case. As in *Kennedy*, the rental car company, as lawful owner, informed law enforcement that Randee Gilliam was an unauthorized driver and instructed the officers to impound the car. Thus, "any residual expectation of

privacy that [Randee Gilliam] might have acquired would have been effectively terminated by [Avis'] directive." *Id*. at 168.

Although Dorian Gilliam was an authorized renter of the Avis car, he also lacks standing to challenge the search under the facts and circumstances of this case, for several complementary reasons. First, his decision to allow Randee Gilliam to drive the car violated the terms of the Avis rental agreement.[2] As explained in *Kennedy*, an authorized driver on the rental agreement has a legitimate and cognizable expectation of privacy in the vehicle only "*within the scope of the rental agreement*." *Id*. at 165 (emphasis added). The *Kennedy* Court rejected the argument that letting an unauthorized person drive was a mere "technical" breach of the rental agreement:

> However, the risk of loss or harm is likely to be quite difficult to quantify, or even estimate, where an unknown and unauthorized individual uses the leased property. In the rental car context, car rental agencies will normally require renters to provide information about all authorized drivers, such as their ages, whether they have valid driver's licenses, and access to their driving records. Of course, there are no means for agencies to obtain this information for unauthorized drivers. They will therefore face significantly higher risks because of the possibility that an unauthorized driver does not have a license, is a young and inexperienced driver, or has a history of accidents or criminal activity.

*Id*. at 166-67. Second, he was a mere renter of the car, not the owner. Third, Dorian was not present at the time of the traffic stop. In *United States v. Dall*, 608 F.2d 910, 915 (1st Cir. 1979), the Court held that a truck owner who was not present at the scene of the stop lacked standing to challenge a search of the truck. The Court explained: "The already diminished expectation of privacy that attaches to motor vehicles is still further attenuated when the owner had given over possession to another for the other's own uses to the temporary exclusion of the owner." Dorian Gilliam, as a mere renter who was not at the scene, has even lesser standing to challenge the search than Dall. Fourth, and most significantly, Dorian

---

[2] The Avis rental terms and conditions are set forth in Government Exh. 4. Of particular relevance, ¶ 10 provides that it is a violation if: "A. You use or permit the car to be used … by anyone other than an authorized driver, as defined in paragraph 4." Paragraph 4(C) reflects that for a non-corporate rental, such as the Gilliams', the term authorized driver is limited to "only you, your spouse or domestic partner." Paragraph 10, provides: "A VIOLATION OF THIS PARAGRAPH, WHICH INCLUDES USE OF THE CAR BY AN UNAUTHORIZED DRIVER, WILL AUTOMATICALLY TERMINATE YOUR RENTAL, VOID ALL LIABILITY PROTECTION AND ANY OPTIONAL SERVICES THAT YOU HAVE ACCEPTED, INCLUDING . . . PERSONAL EFFECTS PROTECTION." Further, ¶ 9 reflects that Avis "may repossess the car anytime it is found . . . being used to violate the law or this Agreement."

did not arrive on scene to assert his rights until <u>after</u> Avis had instructed the officers to impound it.  The officers were certainly entitled to abide by the directive of Avis, as the owner of the car.[3]  *See United States v. Woodley*, 2015 WL 5136173 * 4 (W.D. Pa. September 1, 2015) (describing "insurmountable hurdle" faced by Defendant when rental car company representative has consented to search).  In summary, Dorian Gilliam lacked standing to challenge the search of the rental car under the facts and circumstances of this case.

Conclusion

In accordance with the foregoing, the MOTION TO SUPPRESS EVIDENCE (Document No. 443), SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE (Document No. 458), MOTION TO SUPPRESS EVIDENCE (Document No. 684) and AMENDED MOTION TO SUPPRESS EVIDENCE (Document No. 700) filed by Defendants Randee Gilliam and Dorian Gilliam will be **DENIED**.

A pretrial conference will be scheduled on March 2, 2016 at 2:15 p.m., at which time a trial date will be set.

An appropriate Order follows.

McVerry, S.J.

---

[3] Counsel for Dorian elicited testimony at the hearing regarding a phone call with an Avis representative in which the representative told Dorian that the car should not have been towed. Transcript at 99-100. However, as clarified on re-direct at the hearing, Dorian had told the Avis representative that he (Dorian) had been driving the vehicle, and failed to disclose that he had allowed an unauthorized driver (Randee) to operate the vehicle. Transcript at 100-101. The Court finds that it was standard Avis policy to direct the police to impound cars that are being driven by unauthorized drivers.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) <br> ) <br> )    **2:12-cr-93** <br> **v.** ) <br> ) <br> **RANDEE GILLIAM and DORIAN GILLIAM,** ) <br>                 **Defendants.** ) | |

## ORDER OF COURT

AND NOW, this 23rd day of February, 2016, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION TO SUPPRESS EVIDENCE (Document No. 443), SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE (Document No. 458), MOTION TO SUPPRESS EVIDENCE (Document No. 684) and AMENDED MOTION TO SUPPRESS EVIDENCE (Document No. 700) filed by Defendants Randee Gilliam and Dorian Gilliam are **DENIED**.

A pretrial conference shall be scheduled for March 2, 2016 at 2:15 p.m.


BY THE COURT:

s/ Terrence F. McVerry
Senior United States District Court Judge


cc:    **Charles A. Eberle, AUSA**
       Email: charles.eberle@usdoj.gov

       **Sally A. Frick, Esquire**
       Email: safattyusa@netscape.net
       **Melvin L. Vatz, Esquire**
       Email: mlv@ggvlaw.com